## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>LOWELL FLEET MAINTENANCE, LLC; DRISS ANGARI; and HAYAT CHAHBOUNI,<br><br>Defendants. | Civil Action No. 1:25-CV-11812 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Employers Mutual Casualty Company ("EMC"), by and through its undersigned attorney, seeks a declaratory judgment that it is not obligated under the terms of certain insurance policies to defend or indemnify Defendant Lowell Fleet Maintenance, LLC ("LF Maintenance") against the claims asserted against it in an underlying lawsuit filed in the Superior Court of Suffolk County, Commonwealth of Massachusetts.

## NATURE OF THE ACTION

1. This is an action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking a judicial declaration concerning the scope, if any, of coverage under certain insurance policies EMC issued to Lowell Fleet Maintenance, LLC ("LF Maintenance").

2. EMC issued a general liability policy bearing Policy No. 5D7-34-55-23 to LF Maintenance, with a policy period of July 30, 2022 to July 30, 2023 (the "GL Policy"). A true and accurate copy of the GL Policy is attached hereto as Exhibit 1.

3.      EMC issued a business auto policy bearing Policy No. 5Z7-34-55-23 to LF Maintenance, with a policy period of July 30, 2022 through July 30, 2023 (the "Auto Policy"). A true and accurate copy of the Auto Policy is attached hereto as Exhibit 2.

4.      EMC issued a commercial umbrella policy bearing Policy No. 5J7-34-55-23 to LF Maintenance, with a policy period of July 30, 2022 through July 30, 2023 (the "Umbrella Policy"). A true and accurate copy of the Umbrella Policy is attached hereto as Exhibit 3.

5.      The GL Policy, Auto Policy, and Umbrella Policy are collectively referred to herein as the "EMC Policies."

6.      LF Maintenance has demanded that EMC provide coverage to it under one or more of the EMC Policies for an underlying lawsuit filed in the Superior Court of Suffolk County, for the Commonwealth of Massachusetts, entitled *Driss Angari et al. v. Lowell Fleet Towing, Inc. et al.*, No. 2384-CV-02352 (the "Angari Lawsuit").

7.      The Angari Lawsuit was filed by Defendants Driss Angari and Hayat Chahbouni. A true and accurate copy of the Complaint filed in the Angari Lawsuit (the "Angari Complaint") is attached hereto as Exhibit 4.

8.      LF Maintenance first tendered the Angari Complaint to EMC on November 21, 2023, seeking defense and indemnification against the claims asserted in the Angari Lawsuit under the GL Policy (the "2023 Tender"). A true and accurate copy of the Acord Liability Notice of Occurrence/Claim is attached hereto as Exhibit 5.

9.      LF Maintenance ultimately withdrew the 2023 Tender.

10.      On May 5, 2025, LF Maintenance formally tendered the Angari Lawsuit anew to EMC for defense and indemnification.

-2-

11.    By letter dated May 19, 2025, EMC denied any obligation to defend or indemnify LF Maintenance against the claims asserted in the Angari Lawsuit under the Auto Policy and the GL Policy (the "May 2025 Letter"). EMC, nevertheless, agreed to defend LF Maintenance against the allegations asserted in the Angari Lawsuit under the GL Policy, subject to a full and complete reservation of rights, including the right to bring a declaratory judgment action to determine EMC's obligations, if any, under the GL Policy. A true and accurate copy of the May 2025 Letter is attached hereto as Exhibit 6.

12.    In the May 2025 Letter, EMC reserved all rights and defenses with respect to the Umbrella Policy, including the right to assert that the Umbrella Policy's Auto Coverages Exclusion applies and bars coverage for the claims asserted against LF Maintenance in the Angari Lawsuit.

13.    An actual and justiciable controversy exists between the parties. LF Maintenance contends that EMC is obligated to defend and indemnify LF Maintenance against the claims asserted against LF Maintenance in the Angari Lawsuit. However, for the reasons explained by EMC in its May 2025 Letter, among other things: (a) the GL Policy does not apply to the claims in the Angari Lawsuit because the GL Policy's Aircraft, Auto Or Watercraft Exclusion applies to exclude coverage for these claims; (b) the Auto Policy does not apply to the claims asserted in the Angari Lawsuit because the tow truck at issue is not a covered auto; and (c) the Umbrella Policy's Auto Coverages Exclusion applies to exclude coverage for these claims.

## PARTIES

14.    EMC is an Iowa corporation with its principal place of business located in the State of Iowa.  EMC is registered to do business in the Commonwealth of Massachusetts.

15.     Upon information and belief, Lowell Fleet Maintenance, LLC is a domestic limited liability company with its principal place of business at 26 Tanner Street, Lowell, Massachusetts 01852.

16.     Upon information and belief, no member of Lowell Fleet Maintenance, LLC is a resident of Iowa.

17.     Upon information and belief, Defendants Driss Angari and his wife, Hayat Chahbouni, are residents of Revere, Suffolk County, Massachusetts.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action by virtue of 28 U.S.C. § 1332(a), in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

19.     This Court has the authority and jurisdiction to declare the parties' rights and obligations as requested herein pursuant to 28 U.S.C. §§ 2201 and 2202.

20.     This Court has personal jurisdiction over each of the Defendants because the Defendant: (1) is a resident of the Commonwealth of Massachusetts; (2) committed an act or acts within the Commonwealth of Massachusetts out of which this action arises; and (3) have asserted claims that are the subject matter of this insurance coverage action in the Superior Court of Suffolk County, Commonwealth of Massachusetts.

21.     Venue is appropriate in this District under 28 U.S.C. § 1391(b) because it is a district in which a Defendant resides, and it is the District where a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

**I.     The Angari Complaint**

22.     The Angari Complaint alleges that, on October 8, 2022, George Childs was operating a heavy duty tow truck ("Tow Truck") on Interstate 93 North in Boston, Suffolk County, Commonwealth of Massachusetts.

23.     The Angari Complaint alleges that Childs was operating the Tow Truck in the course of their employment with Lowell Fleet Towing, Inc. ("LF Towing").

24.     The Angari Complaint alleges that the Tow Truck had been in a previous accident and had not been fully repaired.

25.     The Angari Complaint alleges that, on October 8, 2022, Childs struck Driss Angari's car from the rear, totalled Driss Angari's car, killed two passengers, and critically injured Driss Angari (the "Accident").

26.     The Angari Complaint alleges that, as a result of the Accident, Driss Angari has suffered a permanent loss of function both physically and mentally.

27.     The Angari Complaint alleges that, as a result of the Accident, Hayat Chahbouni has suffered a loss of comfort, companionship, assistance, love, affection, and moral support from Driss Angari.

28.     The Angari Complaint alleges that Childs had a duty to operate the Tow Truck in a safe manner.

29.     The Angari Complaint alleges that Childs breached that duty when they struck Driss Angari's vehicle from the rear.

30.     The Angari Complaint alleges that Childs was the proximate cause of the injuries suffered by Defendants Driss Angari and Hayat Chahbouni.

31. The Angari Complaint alleges that LF Towing is vicariously liable for the conduct of its employee, Childs, during the course of their employment.

32. The Angari Complaint alleges that LF Maintenance was contracted to maintain LF Towing's fleets.

33. The Angari Complaint alleges that LF Maintenance was negligent and failed to fully repair the Tow Truck used by Childs.

34. The Angari Complaint alleges that LF Maintenance's failure to repair the Tow Truck was a factor in the Tow Truck not being able to stop quickly enough to avoid rear-ending Driss Angari's car.

35. In the Angari Complaint, Defendants Driss Angari and Hayat Chahbouni assert three causes of action arising out of these allegations: (i) Negligence as against George Childs and LF Towing, (ii) Negligence as against LF Maintenance, and (iii) Loss of Consortium as against George Childs, LF Towing, and LF Maintenance.

36. In the Angari Lawsuit, Defendant Driss Angari seeks judgment against Childs, LF Towing, and LF Maintenance for Driss Angari's: (i) past, present, and future medical bills; (ii) past, present, and future lost wages; (iii) past, present, and future pain and suffering; (iv) diminished capacity to work; (v) out-of-pocket expenses; (vi) total loss of his car; and (vii) such further relief as the Court deems just and proper.

37. In the Angari Lawsuit, Defendant Hayat Chahbouni seeks judgment against Childs, LF Towing, and LF Maintenance for Hayat Chahbouni's: (i) loss of consortium; and (ii) such further relief as the Court deems just and proper.

## II.     LF Maintenance & LF Towing

38.     Upon information and belief, LF Maintenance and LF Towing are wholly owned by a single member and shareholder.

39.     Upon information and belief, LF Towing is engaged in the business of towing.

40.     Upon information and belief, LF Maintenance repairs and maintains LF Towing's commercial motor vehicle assets.

41.     At all times relevant hereto, LF Maintenance represented to EMC that it was not in the business of towing.

## III.     The GL Policy

42.     Per the GL Policy's Named Insured Endorsement, Lowell Fleet Maintenance, LLC and Lowell Fleet Towing, Inc. are Named Insureds.

43.     Subject to, among other things, its terms, conditions, retentions, limitations and exclusions, Section II of the GL Policy, entitled "Who Is An Insured," provides in relevant part:

> **1.**     If you are designated in the Declarations as:
>
> > **c.**     A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.
>
> ***
>
> **2.**     Each of the following is also an insured:
>
> > **a.**     Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . .

44.     Subject to, among other things, its terms, conditions, retentions, limitations and exclusions, the GL Policy's Coverage A provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

45.     The GL Policy defines "bodily injury" as follows:

> "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from bodily injury, sickness or disease.

46.     Subject to, among other things, its terms, conditions, retentions, limitations and exclusions, the GL Policy's Coverage A applies to "bodily injury" and "property damage" only if "[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'" and "occurs during the policy period."

47.     The GL Policy defines "occurrence" as follows:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

48.     Coverage A of the GL Policy also provides: "[EMC] will have the right and duty to defend the insured against any 'suit' seeking those damages. However, [EMC] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

49.     Coverage A of the GL Policy includes a number of exclusions which bar coverage for "bodily injury" in certain circumstances. The exclusions include, but are not limited to, the Aircraft, Auto Or Watercraft Exclusion, which provides in relevant part:

> This insurance does not apply to:
>
> **g.     Aircraft, Auto Or Watercraft**
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of

any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

50.    The GL Policy defines "auto" as follows:

**2.**    "Auto" means:

**a.**    A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.**    Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

51.    Subject to, among other things, its terms, conditions, retentions, limitations and exclusions, the GL Policy also contains a Separation Of Insureds provision which provides in relevant part:

**7.    Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.**    As if each Named Insured were the only Named Insured; and

**b.**    Separately to each insured against whom claim is made or "suit" is brought.

52.     Subject to, among other things, its terms, conditions, retentions, limitations and exclusions, the GL Policy contains a provision concerning voluntary payments which provides in relevant part:

> **2.      Duties in The Event of Occurrence, Offense, Claim Or Suit**
>
> ***
>
> **d.**     No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## IV.     The Auto Policy

53.     Per the Auto Policy's Named Insured Endorsement, Lowell Fleet Maintenance, LLC and Lowell Fleet Towing, Inc. are Named Insureds.

54.     Subject to, among other things, its terms, conditions, retentions, limitations and exclusions, Section II.A.1 of the Auto Policy, entitled "Who Is An Insured," provides in relevant part:

> **The following are "insureds":**
>
> **a.**     You for any covered "auto".
>
> **b.**     Anyone else while using with your permission a covered "auto" you own, hire or borrow except . . .
>
> **c.**     Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

55.     Subject to, among other things, its terms, conditions, retentions, limitations and exclusions, the Auto Policy's "Covered Autos Liability Coverage" provides coverage for "all sums an 'insured' must pay as damages because of 'bodily injury' or 'property damage' to which this

insurance applies, caused by an 'accident' and resulting from the ownership maintenance or use of a covered 'auto'."

56.     Item Two of the Auto Policy's Declarations, entitled "Schedule of Coverages and Covered Autos", shows the "autos" that are covered "autos" for each of the coverages. The numerical symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

57.     Item Two of the Auto Policy's Declarations lists symbols 7, 8, and 9 as the numerical symbols applicable to Covered "Autos" Liability.

58.     Subject to, among other things, its terms, conditions, retentions, limitations and exclusions, Section I of the Auto Policy, entitled "Covered Autos", provides descriptions of the covered auto symbol designations. Subsection A, "Description Of Covered Auto Designation Symbols" provides in relevant part:

### A.     Description Of Covered Auto Designation Symbols

*     *     *

7.      Specifically Described "Autos": Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three).

8.      Hired "Autos" Only: Only those "autos" you lease, hire, rent or borrow.  This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

9.      Non-owned "Autos" Only: Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business.   This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs.

-11-

59.    The Tow Truck is not described in Item Three of the Auto Policy's Declarations.

60.    Upon information and belief, LF Maintenance does not – and at all times relevant hereto did not – lease, hire, rent, or borrow the Tow Truck.

61.    LF Towing owns – and at all times relevant hereto owned – the Tow Truck.

62.    Upon information and belief LF Maintenance does not – and at all times relevant hereto did not – use the Tow Truck in connection with its business.

**V.    The Umbrella Policy**

63.    Per the Umbrella Policy's Named Insured Endorsement, Lowell Fleet Maintenance, LLC and Lowell Fleet Towing, Inc. are Named Insureds.

64.    Subject to, among other things, its terms, conditions, retentions, limitations and exclusions, Section II of the Umbrella Policy, entitled "Who Is An Insured," provides in relevant part:

> **1.**    Except for liability arising out of the ownership, maintenance or use of "covered autos":
>
> **a.**    If you are designated in the Declarations as:
>
> **(3)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.
>
> ***
>
> **b.**    Each of the following is also an insured:
>
> **(1)** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . .

-12-

65.    Subject to, among other things, its terms, conditions, retentions, limitations and exclusions, under Coverage A of the Umbrella Policy, EMC will "pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' to which this insurance applies."

66.    The Umbrella Policy defines "bodily injury" as follows:

> "Bodily injury" means bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury.

67.    Subject to, among other things, its terms, conditions, retentions, limitations and exclusions, Coverage A of the Umbrella Policy applies to "bodily injury" and "property damage" only if "[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'" and "occurs during the policy period."

68.    The Umbrella Policy defines "occurrence" as follows:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

69.    Coverage A of the Umbrella Policy also provides: "[EMC] will have the right and duty to defend the insured against any 'suit' seeking damages for such 'bodily injury' or 'property damage' when the 'underlying insurance' does not provide coverage or the limits of 'underlying insurance' have been exhausted."

70.    The Umbrella Policy defines "underlying insurance" as follows:

> **24.**    "Underlying Insurance" includes:
>
> **a.**    any policies of insurance listed in the declarations under the Schedule of "underlying insurance"; and
>
> **b.**    any other insurance available to the insured (whether primary, excess, excess umbrella, umbrella or contingent and irrespective of whether the insured elects to call upon such insurance to respond), but only when such other insurance

> provides the same type of coverage provided in the policies listed in the Schedule of "underlying insurance".
>
> "Underlying insurance" does not include any policy which was purchased specifically to apply in excess of the limits of liability that apply under this policy.

71. Coverage A of the Umbrella Policy includes a number of exclusions which bar coverage for "bodily injury" in certain circumstances. The exclusions include, but are not limited to, the Auto Coverages Exclusion, which provides in relevant part:

> This insurance does not apply to:
>
> **f.    Auto Coverages**
>
> **(1)**    "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" which is not a "covered auto" . . . .

72. The Umbrella Policy defines "covered auto" as follows:

> "Covered auto" means only those "autos" to which "underlying insurance" applies.

73. The Umbrella Policy defines "auto" as follows:

> **2.**    "Auto" means:
>
> **a.**    A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or
>
> **b.**    Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.
>
> However, "auto" does not include "mobile equipment".

## VI.    LF Maintenance's 2023 Tender of the Angari Lawsuit

74. LF Maintenance first tendered the Angari Complaint to EMC in November 2023, purporting to seek a defense and indemnification against the claims asserted in the Angari Lawsuit under the GL Policy (the "2023 Tender").

75.     In response to the 2023 Tender, EMC explained that the GL Policy did not apply to the claims asserted in the Angari Lawsuit because the GL Policy's Aircraft, Auto Or Watercraft Exclusion applied to exclude coverage for these claims.

76.     LF Maintenance did not object, or otherwise disagree with, EMC's coverage position.

77.     LF Maintenance, through its agent Daniel Nardo, expressly demanded that EMC close the claim file for the Angari claim.

78.     On June 14, 2024, EMC informed LF Maintenance that EMC intended to close the Angari claim based upon its understanding that LF Maintenance had withdrawn the 2023 Tender.

79.     LF Maintenance did not object to EMC's closing the Angari claim.

80.     EMC subsequently closed the Angari claim.

81.     Between November 2023 and May 5, 2025, LF Maintenance acted at all times consistent with its position, and EMC's understanding, that LF Maintenance was not seeking defense or indemnity for the Angari claim.

**VII.    LF Maintenance's 2025 Claim for Coverage**

82.     On May 5, 2025 LF Maintenance tendered the Angari Complaint to EMC anew, seeking defense and indemnification against the claims asserted in the Angari Lawsuit.

83.     By way of its May 2025 Letter, EMC denied any obligation to defend or indemnify LF Maintenance under the GL Policy for the claims asserted in the Angari Lawsuit because they arise out of the ownership, maintenance, use or entrustment to others of an "auto" owned or operated by any insured.

84. EMC nevertheless agreed to defend LF Maintenance in the Angari Lawsuit under a complete reservation of rights, including the right to bring a declaratory judgment action to determine EMC's obligations, if any, under the GL Policy.

85. In the May 2025 Letter, EMC denied any obligation to indemnify LF Maintenance for any costs incurred prior to the date of LF Maintenance's May 5, 2025 letter, as such payments constitute voluntary payments for which EMC has no coverage obligation.

86. In the May 2025 Letter, EMC denied any obligation to defend or indemnify LF Maintenance under the Auto Policy for the claims asserted in the Angari Lawsuit because the Tow Truck is not a covered "auto" as defined by the Auto Policy.

87. In the May 2025 Letter, EMC reserved all rights and defenses under the Umbrella Policy, including the right to assert that the Auto Coverages Exclusion applies and bars coverage for the claims asserted in the Angari Lawsuit because they arise out of the ownership, maintenance, or use of an "auto" – the Tow Truck – which is not a "covered auto" as defined by the Umbrella Policy.

## VIII.    The Pilgrim Auto Policy

88. LF Towing purchased insurance coverage specific to the operation of motor vehicles, including the Tow Truck, from Pilgrim Insurance Company ("Pilgrim").

89. Pilgrim issued a Commercial Auto Policy, No. CSC00001004621, to LF Towing for the policy period January 1, 2022 through January 1, 2023 (the "Pilgrim Auto Policy").

90. The Pilgrim Auto Policy provides that Pilgrim has a duty to defend any insured against any suit seeking damages for bodily injury to which the Pilgrim Auto Policy applies.

91.     Upon information and belief, the Pilgrim Auto Policy provides coverage for the Accident, and Pilgrim has been defending, or participating in the defense of, LF Towing and Childs in the Angari Lawsuit under the Pilgrim Auto Policy.

<u>**COUNT I**</u>
**(Declaratory Judgment – GL Policy: Voluntary Payments)**

92.     EMC hereby repeats and realleges Paragraphs 1 through 91 as if set forth fully herein.

93.     LF Maintenance initially tendered the Angari Lawsuit to EMC in November 2023.

94.     LF Maintenance subsequently withdrew its tender of the Angari Lawsuit.

95.     On May 5, 2025, LF Maintenance tendered the Angari Lawsuit to EMC for a second time.

96.     The GL Policy contains a voluntary payments provision, which provides that no insured will, except at the insured's own cost, voluntarily make any payment or incur any expense without EMC's consent.

97.     Given that LF Maintenance withdrew its 2023 Tender of the Angari Lawsuit, any costs incurred prior to the date of LF Maintenance's May 5, 2025 tender constitute voluntary payments.

98.     EMC is entitled to a declaration that it owes no duty to indemnify LF Maintenance for costs incurred prior to May 5, 2025 because the GL Policy's voluntary payments provision applies to bar coverage for such costs.

99.     An actual and justiciable controversy exists between EMC and the Defendants concerning their respective rights and liabilities under the GL Policy.

<u>**COUNT II**</u>
**(Declaratory Judgment – GL Policy: Aircraft, Auto Or Watercraft Exclusion)**

100.    EMC hereby repeats and realleges Paragraphs 1 through 91 as if set forth fully herein.

101.    The Angari Lawsuit alleges that, on October 8, 2022, LF Towing's employee, Childs, was driving the Tow Truck while working for LF Towing.

102.    The Angari Lawsuit alleges that LF Maintenance maintained the Tow Truck.

103.    The Angari Lawsuit alleges that, on October 8, 2022, while driving the Tow Truck, Childs rear-ended Driss Angari's vehicle, caused the deaths of Driss Angari's two passengers, and critically injured Driss Angari.

104.    The Angari Lawsuit alleges that Childs was negligent in their use of the Tow Truck.

105.    The Angari Lawsuit alleges that LF Towing is vicariously liable for the negligence of Childs.

106.    The Angari Lawsuit alleges that LF Maintenance was negligent in its maintenance of the Tow Truck.

107.    The Angari Lawsuit alleges damages for bodily injury arising out of an auto accident.

108.    The allegations of the Angari Complaint arise out of the ownership, maintenance, or use of the Tow Truck.

109.    The Tow Truck is an "auto" as defined by the GL Policy.

110.    The allegations of the Angari Complaint arise out of the ownership, maintenance, or use of an auto owned by Named Insured, LF Towing.

111.    The allegations of the Angari Complaint arise out of the ownership, maintenance, or use of an auto operated by LF Towing's employee, Childs.

-18-

112.    Subject to, among other things, the GL Policy's terms, conditions, limitations and exclusions, Childs, as LF Towing's employee and in their capacity as the Tow Truck's driver, is an insured under the GL Policy.

113.    EMC is entitled to a declaration that it owes no duty to defend or indemnify LF Maintenance for the claims alleged in the Angari Lawsuit because the GL Policy's Aircraft, Auto Or Watercraft Exclusion bars coverage for these claims.

114.    An actual and justiciable controversy exists between EMC and the Defendants concerning their respective rights and liabilities under the GL Policy.

## COUNT III
### (Declaratory Judgment – Auto Policy)

115.    EMC hereby repeats and realleges Paragraphs 1 through 91 as if set forth fully herein.

116.    The allegations of the Angari Complaint arise out of the ownership, maintenance, or use of the Tow Truck.

117.    At the time of the Accident, LF Towing owned the Tow Truck.

118.    At the time of the Accident, LF Towing's employee, Childs, operated the Tow Truck.

119.    The Auto Policy provides coverage for damages because of "bodily injury" caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

120.    The allegations of the Angari Complaint do not arise out of the ownership, maintenance, or use of a covered "auto".

121.    EMC is entitled to a declaration that it owes no duty to defend or indemnify LF Maintenance for the claims alleged in the Angari Lawsuit because the Tow Truck is not a covered "auto" as defined by the Auto Policy.

122.    An actual and justiciable controversy exists between EMC and the Defendants concerning their respective rights and liabilities under the Auto Policy.

**<u>COUNT IV</u>**
**(Declaratory Judgment – Umbrella Policy)**

123.    EMC hereby repeats and realleges Paragraphs 1 through 91 as if set forth fully herein.

124.    The Angari Lawsuit alleges that, on October 8, 2022, LF Towing's employee, Childs, was driving the Tow Truck while working for LF Towing.

125.    The Angari Lawsuit alleges that LF Maintenance maintained the Tow Truck.

126.    The Angari Lawsuit alleges that, on October 8, 2022, while driving the Tow Truck, Childs rear-ended Driss Angari's vehicle, caused the deaths of Driss Angari's two passengers, and critically injured Driss Angari.

127.    The Angari Lawsuit alleges that Childs was negligent in their use of the Tow Truck.

128.    The Angari Lawsuit alleges that LF Towing is vicariously liable for the negligence of Childs.

129.    The Angari Lawsuit alleges that LF Maintenance was negligent in its maintenance of the Tow Truck.

130.    The Angari Lawsuit alleges damages for bodily injury arising out of an auto accident.

131.    The allegations of the Angari Complaint arise out of the ownership, maintenance, or use of the Tow Truck.

132.    The Tow Truck is an "auto" as defined by the Umbrella Policy.

133.    The Tow Truck is not a "covered auto" as defined by the Umbrella Policy.

134.    EMC is entitled to a declaration that it owes no duty to defend or indemnify LF Maintenance for the claims alleged in the Angari Lawsuit because the Umbrella Policy's Auto Coverages Exclusion bars coverage for these claims.

135.    An actual and justiciable controversy exists between EMC and the Defendants concerning their respective rights and liabilities under the Umbrella Policy.

### PRAYER FOR RELIEF

**WHEREFORE**, pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiff EMC respectfully prays for judgment as follows:

i)    As to Count One, a declaration that the GL Policy's voluntary payments provision applies to any costs incurred by LF Maintenance prior to its second tender of the Angari Lawsuit to EMC and, accordingly, EMC is not obligated to indemnify LF Maintenance for any such pre-tender defense costs;

ii)    As to Count Two, a declaration that the GL Policy's Aircraft, Auto Or Watercraft Exclusion applies to the facts and claims in the Angari Lawsuit and, accordingly, EMC is not obligated to defend or indemnify LF Maintenance for any claims, liabilities, loss, or damages arising out of or in connection with the Angari Lawsuit;

iii)    As to Count Three, a declaration that the Tow Truck is not a covered "auto" within the meaning of the Auto Policy and, accordingly, EMC is not obligated to defend or indemnify LF Maintenance for any claims, liabilities, loss, or damages arising out of or in connection with the Angari Lawsuit;

iv)    As to Count Four, a declaration that the Umbrella Policy's Auto Coverages Exclusion applies to the facts and claims in the Angari Lawsuit and, accordingly, EMC is not obligated to defend or indemnify LF Maintenance for any claims, liabilities, loss, or damages arising out of or in connection with the Angari Lawsuit; and

v)        Awarding such other relief as the Court may deem just, equitable, and proper.


June 23, 2025                              Respectfully submitted,

                                          **Employers Mutual Casualty Company**

                                          By its attorney,

                                           _/s/ Joseph K. Scully_
                                          Joseph K. Scully, BBO # 644014
                                          Day Pitney LLP
                                          Goodwin Square
                                          225 Asylum Street
                                          Hartford, CT 06103
                                          jkscully@daypitney.com
                                          (860) 275-0135